O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RUBEN PAUL GONZALES,

                   Plaintiff,

     v.

NAVARROS TAQUERIA, et al.,

                 Defendants.

Case No.:  8:21-cv-00854-MEMF-DFM

**ORDER DENYING MOTION FOR DEFAULT JUDGMENT [ECF NO. 38]**

      Before the Court is the Motion for Default Judgment filed by Plaintiff Ruben Paul Gonzales. ECF No. 38. For the reasons stated herein, the Court hereby DENIES the Motion for Default Judgment.

/ / /

/ / /

1

1

## I.   Background

2

### A.  Factual Background[1]

3    Plaintiff Ruben Paul Gonzales ("Gonzales" or "Plaintiff") suffers from paralysis to the left

4    side of his body, as well as injuries to his left knee, resulting in difficulty walking. Compl. ¶ 1.

5    Gonzales uses a wheelchair for mobility and neither drives nor owns a driver's license. *Id.*

6    Defendant Rigoberto Navarro ("Navarro") is the owner of the bar[2] Navarros Taqueria, located at

7    1535 S. Standard Ave., Santa Ana, CA 92707. *Id.* ¶¶ 2, 3. Benjamin Penaloza ("Penaloza") is the

8    owner of the premises, building, and/or the land. *Id.* ¶ 4.[3]

9    In or about March 2021, Gonzales went to Navarros Taqueria to make a purchase. *Id.* ¶ 9.

10   However, he was prevented from using the restroom facilities because the restroom was too small

11   and, as a result, there was insufficient space inside the restroom for Gonzales to rotate or otherwise

12   maneuver or position his wheelchair so as to properly use the restroom facility. *Id.* Moreover, the

13   entrance to the restaurant required navigating a 2"–3" step to enter, making it difficult for Gonzales

14   to enter with a wheelchair. *Id.* Additionally, the parking lot entrance was cracked and broken,

15   making it difficult for disabled patrons to enter. *Id.*

16

### B.  Procedural History

17   On May 7, 2021, Plaintiff filed a Complaint against Defendants Navarros Taqueria,[4]

18   Rigoberto Navarro, and Benjamin Penaloza, asserting: (1) a claim for injunctive relief arising out of

19   an alleged violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (2)

20   a claim for damages pursuant to California's Unruh Civil Rights Act ("Unruh Act"), CAL. CIV. CODE

21   §§ 51–53, *et seq.*; (3) a claim for damages pursuant to the California Disabled Persons Act, CAL.

22   CIV. CODE §§ 54, *et seq.*; and (4) a claim for negligence. ECF No. 1. On September 1, 2021, the

23   Clerk of the Court entered default against the Defendants. ECF No. 18. On August 18, 2022,

24

25   ───────────────

26   [1] The factual allegations included in this section are taken from the Complaint. ECF No. 1 ("Compl.").
     [2] In his Complaint, Gonzales notes that Navarros Taqueria is a bar. However, in his Motion for Default

27   Judgment, he describes the business as an "auto store." ECF No. 38 ("Motion" or "Mot.").
     [3] Navarro and Penaloza will be referred to collectively as the "Defendants."

28   [4] On August 18, 2022, Gonzales filed a Notice of Dismissal without prejudice as to Navarros Taqueria
     pursuant to FED. R. CIV. P. 41(a)(1).

Gonzales filed the instant Motion for Default Judgment. Mot. On October 24, 2022, the Court issued an order declining to exercise supplemental jurisdiction over the state law claims. ECF No. 42. The Court held oral argument on November 10, 2022 after transmitting a tentative ruling to Gonzales. Neither party made an appearance.

## II.    Applicable Law

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk of the Court enters default under Rule 55(a). Local Rule 55-1 requires the party seeking default judgment to file a declaration establishing: (1) when and against what party the default was entered; (2) the pleading on which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other like fiduciary who has appeared; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required by FED. R. CIV. P. 55(b)(2). C.D. CAL. L.R. 55-1.

Once default has been entered, the factual allegations in the complaint, except those concerning damages, are deemed admitted by the non-responding party. *See* FED. R. CIV. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). However, default judgment is not automatic upon the Clerk's entry of default; rather, it is left to the sound discretion of the court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092–93 (9th Cir. 1980). When deciding whether to enter default judgment, courts consider seven factors, commonly known as the *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III.    Discussion

Gonzales requests that the Court grant his Motion for Default Judgment. The Court must consider whether: (1) Gonzales has satisfied the procedural requirements of Local Rule 55-1; and (2) the *Eitel* factors weigh in favor of granting default judgment.

/ / /

3

///

### A.  Gonzales has satisfied the procedural requirements of Local Rule 55-1.

On September 1, 2021, the Clerk of the Court entered default against the Defendants. ECF No. 18. The Defendants have not responded to the Complaint or otherwise defended the action. Pursuant to Local Rule 55-1, Gonzales submitted a declaration from counsel: (1) stating that default was entered against the Defendants on September 1, 2022; (2) establishing that the Defendants are not infants or incompetent persons; and (3) asserting that the Servicemembers Civil Relief Act does not apply. Mot., at 6 ("Gonzales Decl.")[5] at 7–8. Finally, Gonzales served the Defendants with a copy of this Motion, which included a notice of the hearing date and time. Mot. at 9. As such, the Court finds Gonzales has complied with the procedural requirements of Local Rule 55-1.

### B.  The *Eitel* factors weigh in favor of denying default judgment.

#### i.   Gonzales would suffer prejudice without a default judgment.

The first *Eitel* factor requires the Court to consider the harm to a plaintiff in the absence of default judgment. *See Eitel*, 782 F.2d at 1471–72. In his Motion, Gonzales makes no argument suggesting that he would suffer prejudice without a default judgment. However, the Defendants neither filed an Opposition to the Motion nor appeared at the hearing on the matter to contest this allegation. Gonzales would suffer prejudice if default judgment were not entered. If the Defendants continue to fail to file a responsive pleading, Gonzales would be denied the right to a judicial resolution of its claims or recourse if default judgment is not entered. The Court therefore finds that this factor weighs in favor of default judgment.

#### ii.   Gonzales has failed to demonstrate the merits of his claims and sufficiency of the Complaint.

The second and third *Eitel* factors consider the substantive merits and sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471–72. Notwithstanding the entry of default, the Court must still determine if the facts alleged give rise to a legitimate cause of action because "claims [that] are

---

[5] The Court notes that the Declaration of Ruben Paul Gonzales can be found attached as Pg. 6 of the Motion.

1  legally insufficient . . .  are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d

2  1261, 1267 (9th Cir. 1992). Gonzales maintains that he is entitled to relief on each of the claims set

3  forth in his Complaint. Mot. at 3–5.

*1.  The ADA*

4

5  The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment

6  of the goods, services, facilities . . . or accommodations of any place of public accommodation by

7  any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.

8  § 12182(a). Discrimination includes "a failure to remove architectural barriers . . . in existing

9  facilities . . . where such removal is readily available." *Id.* § 12182(b)(2)(A)(iv). To prevail on a

10  discrimination claim, "the plaintiff must show that (1) [he] is disabled within the meaning of the

11  ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public

12  accommodation; and (3) the plaintiff was denied public accommodations by the defendant because

13  of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

14  Before the Court can evaluate the merits of Gonzales's ADA claim, it must first consider

15  whether Gonzales has Article III standing to bring a claim under the ADA. Courts should generally

16  take a broad view of constitutional standing in civil rights cases, particularly where, as with the AA,

17  private enforcement suits "are the primary method of obtaining compliance with the Act." *Chapman

18  v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *Doran v. 7-Eleven, Inc.*, 524

19  F.3d 1034, 1039 (9th Cir. 2008)). To establish Article III standing, a plaintiff must show that he has

20  suffered an injury in fact, that the injury is traceable to the defendant's conduct, and that the injury

21  can be remedied by a favorable decision. *See id.* A plaintiff seeking injunctive relief must also

22  "demonstrate a real and immediate threat of repeated injury in the future." *Id.* (internal quotation

23  marks omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

a.  Gonzales has Article III standing.

24

25  The Court finds that Gonzales has standing. The first and second criteria—injury in fact and

26  traceability—are easily satisfied, as Gonzales has stated that he was and continues to be denied full

27  and equal access to Navarros Taqueria because, due to his reliance on a wheelchair, he is unable to

28  properly maneuver or position his wheelchair so as to use the restroom facility and experienced

difficulty entering the restaurant due to both a 2"–3" step at the entrance and an unmaintained parking lot entrance. *See* Compl. ¶¶ 9–11. His lack of access is traceable to the Defendants' maintenance of the Navarros Taqueria facilities. *Id.* Moreover, the second and third elements are not at issue. The Defendants' noncompliance with the ADA has caused Gonzales's injury, and an injunction requiring them to comply with the ADA would redress it. Finally, Gonzales has also adequately alleged "a real and immediate threat of repeated injury in future" as he has stated that he intends to return to Navarros Taqueria. Compl. ¶ 11.

Taking the allegations in the Complaint as true—as the Court must do on a Motion for Default Judgment—the Court finds that Gonzales has sufficiently established standing.

     b. <u>Gonzales qualifies as disabled under the ADA.</u>

The Court also finds that Gonzales readily qualifies as disabled under the ADA. First, Gonzales qualifies as disabled within the meaning of the ADA as he has alleged that he is paralyzed from the waist down and requires the use of a wheelchair for mobility. As the ADA defines disability, in part, as a "physical . . . impairment that substantially limits one or more major life activities" including walking and standing, Gonzales, easily meets this standard as he is paralyzed from the waist down and relies on a wheelchair. 42 U.S.C.§ 12102; *see also Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (finding that a quadriplegic person who relied on a wheelchair qualified as disabled under the ADA); *Doran*, 524 F.3d at 1038 (concluding that paraplegic plaintiff who relied on a wheelchair for mobility was disabled under ADA); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907–08 (9th Cir. 2011) (same).

     c. <u>The Defendants are private entities who own Navarros Taqueria, a place of public accommodation, and the premises on which it is located.</u>

Second, Navarros Taqueria is a restaurant and thus squarely falls under the definition of a "public accommodation" as defined under the ADA. Mot. at 3; Compl. ¶ 13; *see also* 42 U.S.C. § 12181(7)(E) (defining a "public accommodation," in part, as a "restaurant, bar, or other establishment serving food or drink.").

/ / /

1    ///

2                           d.   Gonzales cannot demonstrate that he was denied public
                                 accommodations by the Defendants because of his disability.
3

4           Finally, in support of the third factor, however, Gonzales has failed to adequately allege facts

5    in support of his claim that he was denied public accommodations because of his disability.

6    Gonzales contends that: (1) the restroom facilities at Navarros Taqueria provided inadequate space

7    to allow him to maneuver or position his wheelchair, preventing him from using the restroom; (2)

8    there was a 2"–3" step located at the entrance of the restaurant, making it difficult for Gonzales, as a

9    wheelchair user, to enter; and (3) lastly, the entrance of the parking lot was similarly cracked and

10   broken, making it difficult for patrons to enter.

11          All of these involve architectural barriers Discrimination prohibited by the ADA includes the

12   "failure to remove architectural barriers . . . where such removal is readily achievable" or, where

13   removal is not readily achievable, "a failure to make such . . . facilities . . . available through

14   alternative methods if such methods are readily achievable." 42 U.S.C. § 12182. "Readily

15   achievable" is defined as "easily accomplishable and able to be carried out without much difficulty

16   or expense." *Id.* § 12181(9). As the Ninth Circuit recognized:

17          [T]he ADA requires courts to consider four enumerated factors when determining
            whether an action is readily achievable, including:
18

19          (A)     the nature and cost of the action needed;

20          (B)     the overall financial resources of the facility or facilities involved in the action;
            the number of persons employed at such facility, the effect on expenses and resources,
21          or the impact otherwise of such action upon the operation of the facility;

22          (C)     the overall financial resources of the covered entity; the overall size of the
            business of a covered entity with respect to the number of its employees; the number,
23          type, and location of its facilities; and

24          (D)     the type of operation or operations of the covered entity, including the
            composition, structure, and functions of the workforce of such entity; the geographic
25          separateness, administrative or fiscal relationship of the facility or facilities in question
            to the covered entity
26

27

28

*Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038 (9th Cir. 2020) (citing 42 U.S.C. § 12181(9)(A)–(D)). The Ninth Circuit has adopted a burden-shifting framework when addressing claims for removal of architectural barriers. *Id.* "[T]o satisfy their initial burden, ADA plaintiffs *must* plausibly show how the cost of removing the architectural barrier at issue does not exceed the benefits under the circumstances." *Id.* (emphasis added). Only when a plaintiff makes this initial showing does the burden shift to the defendant to show that the barrier is not "readily achievable." *Id.* at 1038–39. The district court then must "weigh each" of the factors mentioned above to determine whether the removal of the architectural barrier is achievable or not. *Id.* at 1039.

Here, Gonzales has pleaded no facts suggesting that the removal of architectural barriers within the restroom facilities is "readily achievable." Indeed, the only mention of "readily achievable" in Gonzales's Complaint involves a reiteration of the standard that defendants have "specific duties" to "remove all existing barriers to disabled persons where such removal is readily achievable." Compl. ¶ 14. However, Gonzales provides no additional support in his Complaint explaining *how* the removal of architectural barriers is readily achievable.

Gonzales, in his Motion, conclusively states that "restriping accessible parking spaces and erecting necessary signs is relatively inexpensive" and "therefore, is readily accessible [sic]." Mot. at 4. As an initial matter, conclusory statements are insufficient to demonstrate that the removal of an architectural barrier is plausible or readily achievable.[6] Moreover, these proposed actions appear unrelated to the architectural barriers Gonzales has complained of—it is unclear how restriping accessible parking spaces and erecting signs would remedy the issues associated with the cracked parking lot, small restroom, and step at the entrance of the restaurant.[7]

---

[6] *See Core v. Los Feliz Oil Inc.*, No. CV-20-5890-MWF-(PJWx), 2021 WL 3145681, at *5 (C.D. Cal. Feb. 11, 2021) (denying plaintiff's Application for Default Judgment without prejudice because "[p]laintiff's . . . conclusory allegations 'fail to address or otherwise show how the costs of removal do not exceed the benefits under the particular circumstances'"); *see also Bouyer v. Shaina Property, LLC*, No. CV 20-3930 FMO (PLAx), 2020 WL 7775618, at *2 (C.D. Cal. Nov. 2, 2020) (finding that plaintiff's allegations of removing the alleged noncompliant parking and noncompliant curb ramp were "insufficient" as they failed to show how the benefits of removing the barriers exceeded the cost of removal).

[7] The Court recognizes that this was likely a typographical error and that Gonzales meant to recommend removal of these architectural barriers by alternative means.

1      The Court therefore finds that Gonzales has failed to "plausibly show how the cost of

2  removing the architectural barrier at issue does not exceed the benefits under the circumstances." *See*

3  *Lopez*, 974 F.3d at 1038.

4      Accordingly, the Court finds that Gonzales has failed to adequately establish success on the

5  merits of his ADA claim.

6             iii.  <u>The sum of money at stake weighs in favor of default judgment.</u>

7      In considering this factor, the Court "must consider the amount of money at stake in relation

8  to the seriousness of the defendant's conduct. *See Eitel*, 782 F.2d at 1471–72. Generally, default

9  judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to

10  defendant's conduct. *Id.* at 1472 (affirming denial of default judgment where plaintiff sought $3

11  million in damages and parties disputed material facts in pleadings).

12      Here, Gonzales seeks actual attorneys' fees and costs in the amount of $3,600 for the sole

13  remaining claim under the ADA.[8] Mot. at 5. Viewed in conjunction with similar judgments in ADA

14  actions, the total amount —$3,600—is relatively modest and does not weigh against default

15  judgment.[9]

16             iv.  <u>The low possibility of dispute weighs in favor of default judgment.</u>

17      The fifth *Eitel* factor requires the Court to consider the possibility of dispute about material

18  facts in the case. *See id.* at 1471–72. There is little possibility of dispute concerning material facts

19  because (1) based on the entry of default, the Court accepts factual allegations in the Complaint as

20  true and (2) though properly served, Defendants failed to appear and defend against Gonzales's

21  allegations. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Having considered the low likelihood of

22  disputed facts, the Court finds this factor to weigh in favor of default judgment.

23

24  ————————————

25  [8] Because the Court has declined to exercise supplemental jurisdiction over Gonzales's Unruh Act claim, ECF
No. 42, the $4,000 statutory damage award amount originally sought does not factor into the Court's analysis.

26  Only the attorneys' fees and costs pursuant to the ADA remain.

27  [9] *See, e.g.*, *Turner v. Torre*, No. 2:20-cv-02075-SB (RAOx), 2021 WL 5042999, at *3 (C.D. Cal. Feb. 10,
2021) (granting default judgment in the amount of $8,230 comprised of $4,000 in statutory damages, $710 in
costs, and $3,520 in attorneys' fees); *Arroyo v. Cervantes*, No. SACV 19-00182 JVS (ADS), 2020 WL

28  2478793, at *3 (C.D. Cal. Apr. 2, 2020) (granting default judgment with $16,074.50 in attorneys' fees and
$2,525.70 in costs and expenses)

v.   <u>The Court is unable to conclude whether default is due to excusable neglect.</u>

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Gonzales has made attempts to serve Defendants with the Complaint and summons. ECF No. 16, at 1–2; ECF No. 10. Absent any further information, the Court is unable to conclude whether default is due to excusable neglect.

vi.   <u>A policy favoring resolution on the merits neither weighs for nor against default judgment.</u>

The Ninth Circuit's "starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere enactment of Rule 55(b), however, indicates that this preference, standing alone, is not dispositive. *See e.g.*, *Seiko Epson Corp. v. Prinko Image Co. (USA), Inc.*, No. 2:17-04501-AB (JCx), 2018 WL 6264988, at *3 (C.D. Cal. Aug. 22, 2018); *Pepsico, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Although this factor generally weighs against default judgment, a decision on the merits is not possible since Defendants have not responded to the Complaint. Accordingly, this factor alone should not preclude the entry of default.

On balance, reviewing Gonzales's Motion in light of the factors articulated in *Eitel* militates in favor of denying default judgment against the Defendants. The Court therefore DENIES the Motion for Default Judgment.[10]

**IV.   <u>Conclusion</u>**

For the foregoing reasons, the Court hereby DENIES the Motion for Default Judgment.

IT IS SO ORDERED.

Dated: November 11, 2022

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[10] Because the Court has declined to grant the Motion, it need not consider Gonzales's requests for attorneys' fees or costs. *See Eitel*, 782 F.2d at 1473 n.5 (noting that plaintiff's claim for an award of attorneys' fees "need not be considered because he has not prevailed").